# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# LYNCHBURG DIVISION

| | |
|---|---|
| **DARRYL W. STEVENS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 6:14-CV-00021 |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Darryl Wayne Stevens ("Stevens"), challenges the Commissioner of Social Security's ("Commissioner") determination that he was not disabled and therefore not eligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1383f. Specifically, Stevens alleges that the Administrative Law Judge ("ALJ") erred by improperly assessing the severity of his mental impairments at step two, denying his request for a consultative examination, and inaccurately establishing his residual mental and physical residual functional capacity ("RFC"). Stevens also contends that substantial evidence does not support the ALJ's credibility findings. Substantial evidence supports the ALJ's decision. Accordingly, I **RECOMMEND DENYING** Stevens's Motion for Summary Judgment (Dkt. No. 12), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 16.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Stevens failed to demonstrate that he was disabled under the

1

Act.[1]  See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted).  The final decision of the Commissioner will be affirmed where substantial evidence supports the decision.  See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Before me is Stevens's second application for disability benefits.  Stevens initially sought SSI and DIB benefits in an application dated November 12, 2004, which was denied by ALJ Glenn B. Hammond on January 18, 2008, affirmed by this court on February 8, 2011, and affirmed by the Fourth Circuit Court of Appeals on August 25, 2011.  R. 58-74, 76, 98-109, 110.  Stevens protectively filed his second application seeking SSI benefits on March 25, 2011, claiming that his disability began on January 19, 2008.  R. 178.  The Commissioner denied his application at the initial and reconsideration levels of administrative review.  R. 75-84, 85-95.  On January 17, 2013, ALJ Brian B. Rippel held a hearing to consider Stevens's disability claim.  R. 28-57.  Stevens was represented by an attorney at the hearing, which included testimony from Stevens and vocational expert Robert Jackson.  Id.

---

[1] The Act deems a person disabled for SSI purposes "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work.  Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience.  See 42 U.S.C. § 1382c(a)(3)(B).

2

On March 21, 2013, the ALJ entered his decision analyzing Stevens's claim under the familiar five-step process[2] and denying Stevens's claim for benefits. R. 8-27. The ALJ found that Stevens suffered from the severe impairments of degenerative disc disease, fibromyalgia, right-knee impairment status-post arthroscopy, migraine headaches, nasal cavity inflammation status-post nasal perforation, and anemia. R. 14-15. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 15-16. The ALJ further found that Stevens retained the RFC to perform light work,[3] except:

> the claimant can sit, stand, or walk for six hours in an eight-hour workday with the option to alternate positions from sitting to standing as needed while remaining on task. The claimant can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. He should avoid exposure to irritants, such as strong odors, dust, gases, fumes, and poorly ventilated areas, as well as avoid exposure to chemicals and hazards (e.g., machinery and heights).

R. 16. The ALJ determined that Stevens could not return to his past relevant work as a hairdresser, but that Stevens could work at jobs that exist in significant numbers in the national economy such as a mail clerk or counter rental clerk. R. 21-22. Thus, the ALJ concluded that Stevens was not disabled. R. 22. On September 10, 2013, the Appeals Council denied Stevens's request for review (R. 1-5), and this appeal followed. Dkt. No. 3.

---

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[3] An RFC is an assessment, based upon all of the relevant evidence, of what a claimant can still do despite his limitations. 20 C.F.R. § 404.1545. Descriptions and observations of a claimant's limitations by him and by others must be considered along with medical records to assist the Commissioner in deciding to what extent an impairment keeps a claimant from performing particular work activities. Id.

3

## ANALYSIS

Stevens alleges that the ALJ improperly denied his request for a consultative examination and inaccurately assessed the severity of his mental impairments both at step two and in the RFC. Stevens also claims that the ALJ improperly evaluated his physical RFC. Finally, Stevens contends that substantial evidence does not support the ALJ's credibility findings.

### Consultative Examination

Stevens claims that the ALJ should not have denied his request for a consultative examination because the ALJ recognized gaps in his medical record. Stevens also faults the ALJ for failing to acknowledge his financial inability to seek regular medical treatment. At oral argument, the ALJ denied Stevens's request because he received updated treatment records and gave Stevens the opportunity to submit additional evidence for one week. R. 31-32. I find that the ALJ's decision was based on an adequately developed record.

A consultative examination is generally obtained to resolve any conflicts or ambiguities within the record, as well as "to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis or prognosis." 20 C.F.R. §§ 404.1519a(b), 416.919a(a). A consultative examination must be ordered when the evidence as a whole, both medical and non-medical, is not sufficient to support a decision on the claim, or to resolve an inconsistency in the evidence. 20 C.F.R. §§ 404.1519a(b), 416.919a(b). Situations that may require a consultative examination include when "evidence that may have been available from [a claimant's] treating or other medical sources cannot be obtained for reasons beyond [the claimant's] control, such as death or noncooperation of a medical source" or when "[t]here is an indication of a change in [the claimant's] condition that is likely to affect [his] ability to work, but the current severity of [his] impairment is not established." 20 C.F.R. §§ 404.1519a(b)(2)-(4), 416.919a(b)(2)-(4). The

4

ALJ has the discretion to determine when a consultative examination is necessary. 20 C.F.R. §§ 404.1519a(a), 416.919a(a). In Kersey v. Astrue, 614 F. Supp. 2d 679, 694 (W.D. Va. 2009), the court remanded a claim for a consultative examination because the claimant alleged that she had a mental disability but her record included sufficient evidence to support her claim. The court held that "due to the lack of any medical opinions regarding Kersey's alleged mental impairments, the ALJ should have ordered a consultative examination." Id. at 695.

In this case, the ALJ was within his discretion not to order a consultative examination with regard to Stevens's physical impairments. Stevens wanted a consultative examination because his treating physician, Ayesha Nazli, M.D., refused to complete disability paperwork. R. 31. Although Stevens's record did not include a treating physician's physical medical source statement, the record did include opinions from state agency physicians and a mental health source statement that briefly addressed his diagnosis of fibromyalgia. R. 81-82, 91-92, 422-27. The state agency physicians reviewed Dr. Nazli's records and were similarly situated given her varied treatment of Stevens as a general practitioner. Moreover, Dr. Nazli's treatment records were admitted into the record and discussed in depth by the ALJ. R. 18. The ALJ also verified with Stevens's counsel that Stevens's treatment records were up to date. R. 32. Unlike the claimant in Kersey, Stevens's medical record was replete with treatment notes, state agency physicians' opinions, and testimony to inform the ALJ of Stevens's impairments. The ALJ also kept the record open for seven days after the hearing to accept additional opinion evidence relating to Stevens's physical impairments. Id. Without any conflicts or ambiguities in the record, the ALJ had sufficient information to support a decision and was not required to order a consultative examination.

5

It is true that the ALJ has a duty to develop the record. See Cook v. Heckler, 783 F.2d 1168, 1173-74 (4th Cir. 1986). "[T]he ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." Id. (citations omitted). The failure of the ALJ "to ask further questions and to demand the production of further evidence, as permitted by 20 C.F.R. § 404.944" may amount to neglect of this duty. Id. This duty is discharged, however, so long as "the record is adequate to make a determination regarding a disability claim." France v. Apfel, 87 F. Supp. 2d 484, 490 (D. Md. 2000); see also Kersey v. Astrue, 614 F. Supp. 2d 679, 693 (W.D. Va. 2009) (citing Cook, 783 F.2d at 1173); cf. Parker v. Astrue, 792 F. Supp. 2d 886, 895 (E.D.N.C. 2011). Further, this duty does not transform the ALJ into claimant's counsel and the ALJ "has the right to assume that counsel is presenting the claimant's strongest case for benefits." Blankenship v. Astrue, 2012 WL 259952, at *13 (S.D.W. Va. Jan. 27, 2012) (citations omitted). "The regulations require only that the medical evidence be 'complete' enough to make a determination regarding the nature and severity of the claimed disability, the duration of the disability and the claimant's residual functional capacity." Kersey, 614 F. Supp. 2d at 693–94 (citing 20 C.F.R. §§ 404.1513(e) and 416.913(e)). Therefore, the inquiry in determining "whether the record is adequate to support a judicious administrative decision" centers on whether there are "evidentiary gaps" that prejudice the rights of the claimant. Blankenship, 2012 WL 259952, at *13 (citing Marsh v. Harris, 632 F.2d 296, 300 (4th Cir. 1980)).

The evidence before the ALJ was adequate to determine that Stevens's physical impairments did not cause functional limitations beyond those included in the RFC. The ALJ reviewed physical treatment records from Christopher John, M.D., Kenneth Luckay, D.O.,

6

Jasmin Jerez-Marte, M.D., John Schmedtje, M.D., Alfred Durham, M.D., James Mulinda, M.D., and New Horizons Healthcare Clinic. R. 26-27. Stevens has not pointed to anywhere in the record where his treating physicians recommended functional limitations not included in his RFC; the court has not found any in its review. The ALJ also considered the opinions of state agency physicians Richard Surrusco, M.D. and Joseph Duckwall, M.D. R. 81-82, 91-92. The record showed no shortage of information about Stevens's various physical impairments, and the ALJ noted Stevens's treatment for degenerative disc disease, fibromyalgia, migraines, anemia, and right knee pain, among other ailments. R. 18-21. As the fact-finder, it was within the ALJ's province to evaluate the record and weigh the relative worth of the evidence, including opinion evidence, as a necessary part of making his disability decision. See 20 C.F.R. §§ 404.1520b, .1527(c), .1545(a)(3), 416.920b, 927(c), .945(a)(3); see also Green v. Comm'r of Soc. Sec. Admin., No. CIV.A. 8:09-02313, 2010 WL 4782138, at *3 (D.S.C. Nov. 16, 2010) (dismissing claimant's argument that substantial evidence did not support an ALJ's RFC because the treating physician's opinion did not receive controlling weight and the record did not include any other opinion evidence). The record does not demonstrate that these physical impairments functionally limited Stevens's ability to work beyond the limitations provided in the RFC.

Furthermore, beyond generally seeking a consultative examination, Stevens "has not identified material evidence that was missing at the hearing and has not presented new material evidence that should be considered." Clark v. Astrue, 2011 WL 3611326, at *3 (W.D. Va. Aug. 17, 2011). Stevens's record lacks an opinion from an examining physician regarding his physical ailments; however, Stevens has not stated what functional limitations a consultative examiner may find which the record does not reveal. A medical source statement assessing Stevens's physical limitations seems unnecessary given that the record contains extensive

7

treatment records from numerous physicians. Although a consultative examination may have provided a more thorough record, an ALJ has no duty to develop the record if sufficient evidence already exists to determine a claimant's impairments and capacity to work. Therefore, I find no error in the decision of the ALJ not to order a consultative opinion.

**<u>Physical RFC</u>**

Stevens argues that ALJ Rippel violated Social Security Acquiescence Ruling ("AR") 00-1(4) by according "considerable weight" to the findings of the ALJ in Stevens's first claim that he was capable of light work with some physical restrictions. R. 20. The SSA issues Acquiescence Rulings to interpret decisions by a United States Circuit Court of Appeals concerning the Social Security Act. <u>See, e.g.</u>, <u>Melvin v. Astrue</u>, 602 F. Supp. 2d 694, 699 (E.D.N.C. 2009). Here, the Commissioner issued AR 00-1(4) to address the Fourth Circuit decisions in <u>Lively v. Secretary of Health and Human Services</u>, 820 F.2d 1391 (4th Cir. 1987) and <u>Albright v. Commissioner of Social Security Administration</u>, 174 F.3d 473 (4th Cir. 1999) and to provide guidance on the extent that prior decisions regarding a claimant's residual functional capacity apply to subsequent disability claims. <u>See</u> AR 00-1(4), 2000 WL 43774 (January 12, 2000); AR 94–2(4), 1994 WL 321954 (July 7, 1994), <u>rescinded</u> by 65 Fed. Reg. 1936-01.

In <u>Lively</u>, an ALJ found that the claimant had the capacity to do light work and thus was not disabled. <u>See</u> 820 F.2d at 1391–92. At that time, the SSA's regulations provided that anyone over the age of fifty-five who was limited to light work was disabled. <u>See</u> <u>id.</u> at 1391. Two weeks after the ALJ's decision in <u>Lively</u>, the claimant turned fifty-five. <u>Id.</u> at 1392. He then re-filed for benefits, noting that anyone age fifty-five or older limited to light work was entitled to benefits. <u>See</u> <u>id.</u> The ALJ reviewing the new disability claim found that Lively had

8

Case 6:14-cv-00021-NKM-RSB   Document 22   Filed 08/10/15   Page 8 of 20   Pageid#: 579

the capacity to perform any kind of work, not just light work, and thus found Lively not disabled. See id. The Fourth Circuit reversed, stating "[i]t is utterly inconceivable that [claimant's] condition had so improved in two weeks as to enable him to perform medium work." Id. The Fourth Circuit remanded the case, referencing *res judicata* and stating that the SSA bore the burden of providing evidence sufficient to sustain a finding that claimant had embarked on such a "miraculous improvement." Id.

The SSA issued AR 94-2(4) interpreting the Lively decision to require that "an adjudicator must adopt a finding ... made in a final decision by an [ALJ] or the Appeals Council on a prior disability claim." See AR 94–2(4), 1994 WL 321954 (July 7, 1994) rescinded by 65 Fed. Reg. 1936-01. The Social Security Administration interpreted the reference to *res judicata* in Lively to mean that any prior finding from an ALJ generally has *res judicata* effect. See id. at *2 ("The United States Court of Appeals for the Fourth Circuit concluded that where a final decision of the Secretary ... contained a finding ..., the Secretary may not make a different finding ... unless there is new and material evidence relating to [the original finding].").

In Albright v. Commissioner of Social Security Administration, the Fourth Circuit rejected AR 94–2(4) as an incorrect reading of Lively. See Albright, 174 F. 3d at 477-78. The claimant in Albright was denied benefits and filed a subsequent application. See id. at 474. The new ALJ did not evaluate whether claimant's condition had worsened since he previously filed for benefits, but rather denied claimant's application on *res judicata* grounds, citing AR 94–2(4). See id. Claimant sought judicial review of the denial, and the United States District Court for the Middle District of North Carolina granted summary judgment for the claimant and remanded the claim. See id. at 473-74. The Commissioner appealed, and the Fourth Circuit affirmed. See id. at 474. The Fourth Circuit held that it was "imprudent to pronounce, as a matter of law, that [a

9

claimant's] ability to perform in the workplace could not have diminished between [when the initial claim was decided] and [when the new claim was filed]." Id. at 477. The Fourth Circuit also clarified Lively to mean that "the finding of a qualified and disinterested tribunal ... was such an important and probative fact as to render the subsequent finding to the contrary unsupported by substantial evidence." Id. at 477–78. The Fourth Circuit explained that "the result in Lively is ... best understood as a practical illustration of the substantial evidence rule." Id. at 477.

The SSA issued AR 00–1(4) interpreting both Lively and Albright stating that an adjudicator "must *consider* a finding ... made in a final decision by an [ALJ] or the Appeals Council on [a] prior ... claim." AR 00–1(4), at *1 (emphasis added). Specifically, an adjudicator "must consider such finding as evidence and give it appropriate weight in light of all the relevant facts and circumstances when adjudicating a subsequent disability claim." Id. at *4. Ruling AR 00–1(4) describes certain factors that the adjudicator should consider, such as:

> (1) whether the fact on which the prior finding was based is subject to change with the passage of time; (2) the likelihood of such a change, considering the length of time that has elapsed ...; and (3) the extent that evidence not considered in the [previous] final decision ... provides a basis for making a different finding.

Id. In sum, Lively, Albright, and AR 00-1(4) hold that an ALJ must consider a prior ALJ's findings and give them appropriate weight under all the relevant facts and circumstances. In this case, ALJ Rippel considered and discussed ALJ Hammond's prior rulings and findings as required by AR 00-1(4), and gave them considerable weight when making his decision. Having reviewed the record as a whole, I find that substantial evidence supports ALJ Rippel's decision to give considerable weight to ALJ Hammond's decision issued five years earlier.

In formulating Stevens's RFC, ALJ Rippel considered the prior 2008 decision of ALJ Hammond, which found Stevens capable of light work. R. 20. In discussing ALJ Hammond's

10

decision, ALJ Rippel noted the record did "not document significant changes in the claimant's medical condition since that decision." Id. Although the ALJ did not specifically address whether the facts which formed the basis for the denial of Stevens's first claim were subject to change with the passage of time, or the likelihood of such change, the evidence in the record did not demonstrate such a change.

More than five years passed between the ALJ's decision in the first claim and the ALJ's decision in this case. Such a lengthy passage of time generally increases the likelihood that the prior decision is entitled to less weight. See Albright, 174 F. 3d at 477 ("Although we might state with some assurance that a claimant's condition very likely remains unchanged with a discrete two-week period, we would grow ever less confident as the timeframe expands. Where, as here, the relevant period exceeds three years, our swagger becomes barely discernible."); Harris v. Astrue, Civ. Action No. 2:12-cv-45, 2013 WL 1187151, at *8 (N.D. W. Va. March 21, 2013). During that time period, Stevens amassed new medical records that ALJ Rippel was required to consider when deciding Stevens's claim. See Farrar v. Astrue, Civ. No. 3:11-cv-457, 2012 WL 3113159, *9-*10 (E.D. Va. July 13, 2012) (finding error for ALJ to ignore additional material evidence generated after prior decision and give great weight to prior ALJ decision). The ALJ reviewed the new medical evidence since the denial of the first claim, and determined that the records reflected similar evidence of the symptoms and functional limitations presented in the first claim.

The evidence submitted during the first application for benefits showed that Stevens received pain management treatment for fibromyalgia and neck, shoulder, low back, and hip pain. R. 68. Medical records showed that Stevens suffered from mild relative canal stenosis and mild narrowing in his cervical spine, as well as migraines responsive to medication. Id. Stevens

11

was involved in a car accident in July 2006, which triggered complaints of swelling in his right knee and severe headaches; Dr. John treated and recommended surgery on Stevens's torn medial meniscus, and Vikram Chand, M.D. treated his anemia. R. 69-70. The record in the first claim generally addressed the same physical problems as those in the application before this court, including degenerative disc disease, fibromyalgia, migraines, nasal cavity inflammation status-post nasal perforation, anemia, and a right knee injury.

The physical evidence reviewed in this case parallels the record in the first claim. Stevens underwent a right knee arthroscopy on January 4, 2008; Dr. John wrote that Stevens recovered well post-surgery and that at least some of his pain was caused by not strengthening his knee. R. 391-99. Stevens chose not to receive an arthroscopy on his left knee despite Dr. John's recommendation and belief that recovery would be easier than with the right knee.[4] R. 391-93. The record shows that Stevens was involved in a car accident in May 2008. He did not complain of injury at the time of the accident, but later complained of "flutters, worsenign [sic] headaches and neck pain." R. 417. From late 2007 through February 2009, Stevens received CT scans, attended appointments with various doctors, and received medication and injections to treat a range of illnesses including neck pain, hypertension, low testosterone, swelling in his feet and legs, bilateral knee pain, and arthralgia. R. 357-419, 429-48; see also R. 384 (including opinion from Dr. Luckay that he can "see no reason why [Stevens] cannot work and contribute positively to society," and believing he is "[n]ot qualified in my opinion for permanent disability"). The record shows his extensive treatment was conservative and that

---

[4] Stevens contends in his brief that he chose not to undergo the second arthroscopy because his right knee continued to have problems despite surgery. Dkt. No. 13, p. 27. Although the court takes his statement into consideration, Dr. John found that his knee examinations were benign, his poor condition caused some of his knee pain, and that Stevens "just needs to strengthen his right knee a little bit more." R. 391-92. However, Stevens refused to go to physical therapy. R. 391.

12

more intense or invasive treatment was not recommended, with the exception of a left knee arthroscopy, which he refused.

Following February 2009, Stevens's medical treatment becomes sparse. Stevens met with Dr. Nazli several times from March 2010 through September 2012 for general care appointments and received treatment for numerous physical problems, including degenerative disc disease, fibromyalgia, hypertension, fatigue, and neck pain. R. 274-99, 304-21, 332-38, 343-56, 450-54. Stevens also met with Dr. Jerez-Marte in August 2011 for conservative hypertension and hypothyroidism treatment. R. 324-29. The treatment record is silent after his last appointment with Dr. Nazli through the time of ALJ Rippel's decision. Drs. Surrusco and Duckwall reviewed the record in July and September 2011, and came to the same conclusion as the ALJ reached in the first claim–that Stevens is capable of occasionally lifting and/or carrying twenty pounds, frequently lifting and/or carrying ten pounds, and standing, walking, and/or sitting for six hours in an eight-hour workday. Compare R. 71, with R. 81, 91.

The record contains substantial evidence supporting ALJ Rippel's decision to give considerable weight to ALJ Hammond's prior decision, and to conclude that Stevens is capable of performing a range of light work. Stevens argues that his condition has worsened since 2008. In fact, the record shows that Stevens continued to receive conservative treatment for the same impairments which Stevens claimed were disabling in 2008. In this case the ALJ fairly characterized the newly submitted evidence of the noninvasive arthroscopy, knee injections, and pain management records as conservative treatment that did not support a finding of a worsening physical condition. The record does not support the conclusion that Stevens had a significant change in his functional abilities or his treatment regimen.

13

Moreover, Stevens fails to recognize that the fact the ALJ gave considerable weight to the ALJ's findings in the first claim does not mean that he was bound by those prior findings. The prior ALJ's decision was only one factor the ALJ considered. The ALJ extensively reviewed Stevens's physical record from 2007 through 2012, expressed concern about inconsistencies in the record, and gave great weight to the state agency physicians' opinions that Stevens can perform light work–all prior to affording considerable weight to the decision of the ALJ in the first claim. Thus, Stevens's appeal essentially asks the court to reanalyze the facts and reweigh the evidence, disregarding the substantial evidence standard of review that this court must apply to the ALJ's decision. The issue before this court is not whether it is plausible that a different fact-finder could have drawn a different conclusion or even if the weight of the evidence supports a finding of disability. The standard is whether the ALJ's decision is supported by substantial evidence. So long as this standard–defined as more than a mere scintilla but perhaps somewhat less than a preponderance–is met, I cannot recommend reversing the ALJ's decision. See Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence supports the physical RFC.

**Mental Non-Severe Impairments & RFC**

Stevens argues that the ALJ erred by finding his mental impairments to be non-severe, and subsequently, not addressing the limitations from these impairments in his RFC. Although Stevens does not specify which impairments the ALJ should have found severe, his cited evidence appears to challenge the ALJ's decision regarding depression, hypertension,[5] and anxiety. Stevens, as claimant, bears the burden of proof in showing that these impairments were severe. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). "[A]n impairment can be

---

[5] Hypertension is not a mental impairment. The Social Security Administration classifies hypertension as a cardiovascular disability. See 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 4.12 (2015). Although not a mental impairment, the court will address Stevens's argument about hypertension here to remain consistent with his brief.

14

considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984).

Substantial evidence supports the ALJ's finding at step two that Stevens's anxiety and depression are non-severe and have only a minimal effect on his ability to work. Stevens has received inconsistent, conservative psychiatric care. From February 2008 through September 2010, John S. DeVerter, M.D. and his associates at Central Virginia Community Services treated Stevens's complaints of severe depression and moderate anxiety. R. 239-67. Stevens's mental status examinations generally showed normal results. See, e.g., 241, 250-51, 259-60. In a December 2008 medical source statement, Dr. DeVerter diagnosed Stevens with mild major depressive order and found that he had a poor ability to perform at a consistent pace without an unreasonable number and length of rest periods; however, Stevens otherwise could perform unskilled work at an "unlimited," "good," or "fair" level. R. 423-25. Dr. DeVerter expected Stevens to miss work three times per month "due to fibromyalgia–not due to mental health," which is not the area of his treating expertise. R. 427.

In addition to Dr. DeVerter's services, Stevens occasionally sought treatment for his anxiety and depression at Roanoke Valley Family Medical Clinic and Central Virginia Community Services in 2008; he received diagnoses of anxiety and depression following a depression screening in March 2010 and regularly received medication for his depression. R. 239-67, 281-84, 332-34, 345. Stevens testified that he experiences weekly anxiety attacks, has difficulty sleeping, and has difficulty concentrating and focusing. R. 46-49. Although Stevens received diagnoses of anxiety and depression, his sporadic treatment has been very

15

conservative, his symptoms have been mild, and his doctors did not note functional limitations that prevent him from entering the workforce. The medical record suggests Stevens's mental health impairments can be medically controlled and not inhibit his daily activities. Substantial evidence supports the ALJ's assessment of non-severe impairments.

The ALJ's finding that Stevens's hypertension is non-severe likewise is supported by substantial evidence. Stevens repeatedly has received diagnoses of hypertension since January 2008, but has exhibited mild symptoms controlled by medication. See, e.g., R. 324-28, 387-88, 408-09, 429-41, 450-54. A stress test completed at Roanoke Heart Institute in September 2008 showed normal results. R. 402. At his hearing before the ALJ, Stevens did not discuss hypertension symptoms or how they impacted his ability to function. Similar to Stevens's other non-severe impairments, the record only showed a diagnosed impairment controlled by medication. Therefore, the ALJ did not err in determining Stevens's hypertension as non-severe.

Even assuming the ALJ erred in determining the disputed impairments as non-severe at step two, the error would be harmless because he considered the effects of all of Stevens's severe and non-severe impairments in formulating the RFC. See Brooks v. Astrue, 2012 WL 1022309, at *11 (W.D. Va. Mar. 26, 2012). Stevens alleges that the ALJ failed to adequately account for his mental health impairments when formulating his RFC. However, the ALJ considered Stevens's entire record of impairments and specifically discussed the state agency consultants' mental assessments in his explanation of the RFC. The ALJ recited their opinions that Stevens faced mild to no restriction in activities of daily living, mild to no difficulties in social functioning, and no difficulties with concentration, persistence, or pace, and no episodes of decompensation. R. 19. Although the ALJ did not discuss the remainder of Stevens's mental

16

health record–possibly because he had no treatment records from the relevant period[6]–substantial evidence still supports his decision.

The majority of evidence regarding Stevens's mental health, which has been detailed above, shows very conservative treatment, managed symptoms with medication, and fewer and fewer visits after 2008. The opinions regarding Stevens's mental functionality support this minimal record and the ALJ's decision. Dr. DeVerter's 2008 assessment consistently found Stevens had a fair or better mental ability and aptitude for unskilled work. R. 423-25. State agency consultant Julie Jennings, Ph.D. reviewed Stevens's records in August 2011 and determined that his non-severe affective disorder had mild to no impact on his ability to function. R. 79-80. Howard S. Leizer, Ph.D. diagnosed Stevens with affective and anxiety disorders, but again determined these impairments were not severe and caused either mild to no functional limitations. R. 89-90. Although the ALJ ideally would have addressed Stevens's mental limitations in greater detail, the court has sufficient information from the ALJ's decision and the record to determine that substantial evidence supports his findings. Stevens's treating physicians did not find severe diagnoses or functional limitations based on his mental health impairments. For these reasons, I find no error on the part of the ALJ in determining Stevens's mental impairments non-severe and declining to provide for mental limitations in the final RFC.

### Credibility

Stevens lastly contends that the ALJ improperly discounted the credibility of his subjective complaints for depression, fibromyalgia, migraines, hand numbness, and pain. Stevens summarizes his treatment history and medical assessments as the basis for his

---

[6] The ALJ may not have directly addressed Stevens's mental health records dating prior to March 2011 because the relevant period began on Stevens's protected filing date of March 25, 2011. Cf. McGinnis v. Astrue, 709 F. Supp. 2d 468, 473 (W.D. Va. 2010) (remanding a denied claim to review additional records because the claimant's severe depression likely did not change within the few months after the ALJ's decision).

17

complaints, and takes issue with the ALJ's inaccurate interpretation of his testimony. The ALJ found Stevens's testimony "not entirely credible" because the record did not support his allegations of a worsening condition since the prior adjudication, difficulty ambulating without a cane, and anemia despite receipt of normal test results. R. 18-19. The ALJ also cited inconsistencies in Stevens's testimony about recreational activities and drinking frequency. R. 19. Stevens's arguments consist of nothing more than facial disagreements with the ALJ's conclusions.

The ALJ determines the facts and resolves inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Stevens's subjective allegations of disabling pain are not conclusive. Rather, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Stevens met his burden of proving that he suffers from an underlying impairment that is reasonably expected to produce his claimed symptoms. See Craig v. Chater, 76 F.3d 585, 592–93 (4th Cir. 1996). The ALJ then must evaluate the intensity and persistence of the claimed symptoms and their effect upon Stevens's ability to work. Id. at 594-95.

The ALJ provided a thorough explanation and numerous examples as to why he did not find Stevens credible. Although Stevens argues that his physical condition has worsened since 2008, the court has found that substantial evidence supports the ALJ's finding that his physical ailments have stabilized and have been treated conservatively. A claimant's testimony is not sufficient on its own to demonstrate an inability to work when the objective medical evidence does not support such a finding. The ALJ also fairly took into account inconsistencies in Stevens's testimony. Although Stevens contends that the ALJ erroneously inflated his participation in recreational activities, the record reflects that Stevens engages in a wide range of

18

activities that bear on the credibility of his subjective pain complaints. Stevens testified at the January 2013 ALJ hearing that he makes microwave dinners for his meals, maintains his personal hygiene, and visits an aunt who lives a 15-minute drive away from his home. R. 51-52. He wrote in his disability function report that he can wash dishes, clean laundry, pay bills, handle a savings account, and use a checkbook. R. 192-195. Although these daily activities by themselves are not to be considered substantial gainful activity, the level and degree of the activities have some bearing on Stevens's ability to function in a vocational setting and may properly be considered by an ALJ. See 20 C.F.R. §§ 404.1529(c)(3)(i), 404.1572(c). As for Stevens's conflicting statements about his drinking frequency, the ALJ fairly considered the perceived inconsistency between Stevens's unclear testimony at the hearing and his 2011 self-report to his doctor; regardless, this is but one factor of several that the ALJ took into consideration.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight); see also Chafin v. Shalala, No. 92-1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993). The combined weight of the evidence from objective medical tests, self-reported activities, and credible medical opinions provides substantial evidence supporting the ALJ's credibility finding.

## **CONCLUSION**

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial

19

evidence, and in this case, substantial evidence supports the ALJ's opinion. The ALJ properly considered all of the objective and subjective evidence in adjudicating Stevens's claim for benefits and in determining that his impairments would not significantly limit his physical or mental ability to do basic work activities. Accordingly, I recommend that the Commissioner's decision be affirmed, the defendant's motion for summary judgment be **GRANTED**, and Stevens's motion for summary judgment be **DENIED**.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: August 10, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge