# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| DARRYL W. STEVENS, *Plaintiff*, v. CAROLYN W. COLVIN, Acting Commissioner of Social Security, *Defendant*. | CASE NO. 6:14-cv-00021<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on the parties' cross Motions for Summary Judgment (docket nos. 12 and 16), the Report & Recommendation of United States Magistrate Judge Robert S. Ballou (docket no. 22, hereinafter "R&R"), and Plaintiff's Objection to the R&R (docket no. 23). Pursuant to Standing Order 2011-17 and 28 U.S.C. § 636(b)(1)(B), the Court referred this matter to Judge Ballou for proposed findings of fact and a recommended disposition. Judge Ballou filed his R&R, advising this Court to deny Plaintiff's Motion for Summary Judgment, and grant the Commissioner's Motion for Summary Judgment. Plaintiff timely filed his Objections, obligating the Court to undertake a *de novo* review of those portions of the R&R to which objections were made. *See* 28 U.S.C. § 636(b)(1)(B); *Farmer v. McBride*, 177 F. App'x 327, 330 (4th Cir. 2006). For the following reasons, I will overrule Plaintiff's Objections and adopt Judge Ballou's R&R in full.

### I. BACKGROUND

On March 25, 2011, Plaintiff Darryl Wayne Stevens ("Plaintiff") protectively filed an application for supplemental security income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 1381–1383f. To receive SSI benefits, Plaintiff must show that his disability began

1

on or before the date he applied for benefits, and has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 1382(a), 1383(a)(1); 20 C.F.R. §§ 416.202(a), 416.905(a).

Plaintiff was born on November 2, 1966, and was considered a younger person under the Act on his alleged onset date. *See* Administrative Record (hereinafter "R."), at 178; 20 C.F.R. § 404.1563(c). He attended school through the tenth grade and performed light, skilled work as a hairdresser from 1985 through 2002. R. 26, 34, 53, 78, 183.

Plaintiff claims his disability began on January 19, 2008. R. 11. Plaintiff complains of persistent neck pain, low back pain, numbness in the hands, and bilateral knee pain. R. 17, 33, 40, 46, 75–76, 201. Plaintiff states that his pain, fatigue, and migraine headache make standing or sitting difficult. R. 17, 33, 41, 75–76. Plaintiff complains of severe panic attack and depression that impairs his ability to work. R. 17, 33, 47. Plaintiff alleges weekly migraines that last from 12 hours to three days. R. 17, 43, 75–76, 201. Plaintiff testified that his medication makes him feel tired and sluggish. R. 17, 42. Plaintiff complains of thyroid issues that cause him to feel fatigued. R. 33, 75–76. He contends that his conditions result in extremely limited mobility. R. 17. This Court has jurisdiction pursuant to 42 U.S.C. § 1383(c)(3).

### A. The ALJ's Decision

The state agency denied Plaintiff's application at the initial and reconsideration levels of administrative review, R. 83, 93, and on January 17, 2013, Administrative Law Judge ("ALJ") Brian Rippel held a hearing to consider Plaintiff's disability claim. R. 28. Counsel representing Plaintiff and a vocational expert appeared at the hearing. *Id.*

In order to be eligible for Social Security benefits, a claimant must be disabled within the meaning of the Act. Determining disability entails a five-step inquiry. *Walls v. Barnhart*, 296

2

F.3d 287, 290 (4th Cir. 2002). The Commissioner asks whether: (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment, or combination of impairments, that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in Appendix I of 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the duration requirement in 20 C.F.R. §§ 404.1509 and 416.909; (4) the claimant is able to perform his past relevant work; and (5) whether the claimant can perform other specific types of work. *Hancock v. Astrue*, 667 F.3d 470, 472–73 (4th Cir. 2012).

The claimant has the burden of production and proof in Steps 1–4. *See Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). If the claimant satisfies that burden, at Step 5 the burden shifts to the Commissioner "to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education, and work experience." *Id.* If a determination of disability can be made at any step, the Commissioner need not analyze subsequent steps. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

ALJ Ripple found that Plaintiff suffers from the following severe impairments: degenerative disk disease, fibromyalgia, right-knee impairment status-post arthroscopy, migraine headache, nasal cavity inflammation status-post nasal perforation, and anemia. R. 14. He also found that Plaintiff has not engaged in substantial gainful activity since March 25, 2011, the disability application date. R. 13. However, he found that none of Plaintiff's impairments or combination of impairments meet or equal the severity of one of the listed impairments in 20 C.F.R. §§ 416.920(d) or 416.926. R. 15. He further concluded that Plaintiff has the residual capacity to perform light work, occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. R. 16.

3

Although he found Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms," ALJ Ripple found that "claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms" were not entirely credible, because they were contradicted by objective medical evidence and because "[r]ecord inconsistencies . . . tend to detract from" Plaintiff's credibility. R. 18–19. He concluded that Plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R. 22.

### B. The Summary Judgment Motions

Plaintiff argued in his Motion for Summary Judgment that: (1) ALJ Ripple improperly denied Plaintiff's request for a consultative physical examination; (2) he failed to properly assess Plaintiff's physical and mental residual functional capacity; (3) he failed to properly assess the severity of Plaintiff's mental impairments at Step Two of the five-step sequential process under 20 C.F.R. § 416.920(a); and (4) that his credibility findings are not supported by substantial evidence.

The Commissioner's Motion for Summary Judgment argued that ALJ Ripple's decision is supported by substantial evidence. First, the Commissioner argued that Plaintiff failed to establish that his mental impairment was severe during the relevant period of time. The Commissioner emphasized that Plaintiff received no mental health treatment during the relevant period of the case; that two state agency psychologists opined that Plaintiff did not have a severe mental impairment; that Plaintiff relied on RFC assessments which predate the relevant period in this case by more than two years; and that, even if Plaintiff's mental impairments were severe, the Commissioner's decision is nevertheless supported by substantial evidence because he did not deny the claim at Step Two, but rather proceeded to consider all of Plaintiff's severe and

4

non-severe medical impairments. Second, the Commissioner argued that ALJ Ripple's decision to deny a consultative examination was within his discretion. Third, she argued that ALJ Ripple's RFC assessment was supported by substantial evidence. Fourth and finally, the Commissioner argued that ALJ Ripple's credibility finding is supported by substantial evidence.

### C. The Magistrate Judge's Report and Recommendation

Magistrate Judge Robert S. Ballou recommends denying Plaintiff's Motion for Summary Judgment, and granting the Commissioner's Motion for Summary Judgment. In his R&R, Judge Ballou addressed Plaintiff's claims that: (1) the ALJ should not have denied his request for a consultative examination; (2) the ALJ violated Social Security Acquiescence Ruling ("AR") 00-1(4) by according "considerable weight" to the findings of the ALJ in Plaintiff's first claim of disability; (3) the ALJ erred by finding his mental impairments to be non-severe; and (4) the ALJ improperly discounted the credibility of Plaintiff's subjective complaints of depression, fibromyalgia, migraines, hand numbness, and pain. Judge Ballou comprehensively reviewed Plaintiff's claim history, the medical evidence on record before the ALJ, Plaintiff's testimony at the hearing, and the ALJ's findings. In particular, the R&R extensively reviewed Plaintiff's psychological history and treatment. After considering ALJ Ripple's opinion, Judge Ballou concluded that it was supported by substantial evidence.

## II. STANDARD OF REVIEW

A reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). Substantial evidence requires more than a mere scintilla, but less than a preponderance, of evidence. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). A finding is supported by substantial evidence if it is

based on "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). Where "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the court must defer to the Commissioner's decision. *Johnson*, 434 F.3d at 653.

In determining whether the ALJ's decision was supported by substantial evidence, a reviewing court may not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the ALJ. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). "Ultimately, it is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, even if the court would have made contrary determinations of fact, it must nonetheless uphold the ALJ's decision, so long as it is supported by substantial evidence. *See Whiten v. Finch*, 437 F.2d 73, 74 (4th Cir. 1971). Ultimately, the issue before this Court is not whether Plaintiff is disabled, but whether the ALJ's determination is reinforced by substantial evidence, and whether it was reached through correct application of the law. *Craig*, 76 F.3d at 589.

### III. DISCUSSION

#### A. ALJ's Denial of Consultative Examination

Plaintiff argues that Judge Ballou erroneously concluded that ALJ Ripple's decision was based on an adequately developed record, and therefore erred in finding that he properly denied

Plaintiff's request for a consultative physical examination. Plaintiff makes the following objections.

First, Plaintiff argues that the administrative record lacks opinions from physicians who actually examined Plaintiff before rendering an opinion as to Plaintiff's RFC. This, the Plaintiff suggests, makes the record inadequately developed. As Judge Ballou's R&R makes clear, however, the ALJ had an adequate record on which to base his conclusion. A record is adequate where there is sufficient medical evidence on which the ALJ may "make a determination regarding the nature and severity of the claimed disability, the duration of the disability and the claimant's residual functional capacity." *Kersey v. Astrue*, 614 F. Supp. 2d 679, 693–94 (W.D. Va. 2009) (citing 20 C.F.R. §§ 404.1513(e) and 416.913(e)). ALJ Ripple reviewed physical treatment notes from Christopher John, M.D., Kenneth Luckay, D.O., Jasmin Jerez-Marte, M.D., John Schmedtje, M.D., Alfred Durham, M.D., James Mulinda, M.D., and New Horizons Healthcare Clinic. R. 26–27. He also reviewed opinions of state agency physicians Richard Surrusco, M.D., and Joseph Duckwall, M.D. R. 81–82, 91–92. These treatment notes contained detailed information regarding Plaintiff's physical condition sufficient to support ALJ Ripple's finding. The treatment notes of seven private physicians and two state agency physicians are a sufficient record on which ALJ Ripple could base his decision.

Second, Plaintiff argues that "gaps" in his medical treatment records render the record inadequate. Plaintiff never—either in his Brief in Support of Motion for Summary Judgment (docket no. 13) or in his Objection to the R&R (docket no. 23)—states specifically what gaps exist. Plaintiff suggests that these "gaps" might be useful in evaluating his RFC, but fails to note with any specificity what information the ALJ lacked. Moreover, Plaintiff ignores that ALJ Ripple kept the record open for seven days after the hearing to accept any necessary additional

7

opinion evidence relating to his RFC. R. 32. Plaintiff has therefore failed to establish what gaps in his medical records exist, and why they make the record inadequate.

Finally, Plaintiff argues that a consultative examination would provide RFC opinions from an examining physician and would provide "more detailed findings" than those issued by other physicians. This argument essentially asks the Court to reweigh the evidence and come to a different conclusion than the ALJ. As made clear above, this is not the function of the Court. The record was adequately developed, and there is no suggestion that the record contains conflicts or ambiguities; therefore, the ALJ properly denied Plaintiff's request for a consultative examination.

### B. Physical RFC

Plaintiff argues that ALJ Ripple violated Social Security Acquiescence Ruling ("AR") 00-1(4) by affording ALJ Hammond's previous physical RFC determination[1] considerable weight. AR 00-1(4) requires an ALJ to "consider a finding . . . made in a final decision by an [ALJ] or the Appeals Council on [a] prior . . . claim." AR 00-1(4), at *1. An ALJ "must consider such finding as evidence and give it appropriate weight in light of all the relevant facts and circumstances when adjudicating a subsequent disability claim." *Id.* at *4. An ALJ should consider the following factors in determining how much weight to ascribe to a previous ALJ finding:

> (1) [W]hether the fact on which the prior finding was based is subject to change with the passage of time; (2) the likelihood of such a change, considering the length of time that has elapsed . . . and (3) the extent that evidence not considered in the [previous] final decision . . . provides a basis for making a different finding.

*Id.*

---

[1] ALJ Hammond determined that Plaintiff could do light work that allows him the option to alternate from sitting to standing as needed; requires no more than occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; and does not require exposure to hazards, chemicals, strong odors, dust, or fumes. R. 20, 71.

Plaintiff argues that his medical record has changed substantially since the previous adjudication date of January 18, 2008, and, therefore, that ALJ Ripple's reliance on ALJ Hammond's physical RFC is improper. In this vein, Plaintiff objects to ALJ Ripple's conclusion that "[t]he record fails to show that the claimant's condition has worsened since January 18, 2008." *See* R. 19. In particular, Plaintiff makes much of medical opinions issued by Dr. John DeVerter, opinions which were rendered after ALJ Hammond's previous physical RFC determination.

In December 2008, Dr. DeVerter completed a Medical Opinion Re: Ability to Do Work-Related Activities (Mental) form. R. 423. Dr. DeVerter opined that Plaintiff "may need periodic rest periods to deal [with] pain due to fibromyalgia." R. 424. Dr. DeVerter observed that Plaintiff's condition had existed since at least July 4, 2006, and opined that his condition would require him to be absent from work more than three times a month. R. 427. Plaintiff argues that Dr. DeVerter's opinion undermines ALJ Ripple's determination that Plaintiff's condition has not worsened since January 18, 2008.

ALJ's Ripple's conclusion, and his reliance on ALJ Hammond's previous physical RFC determination is, however, supported by substantial evidence. ALJ Ripple specifically acknowledged in his physical RFC determination that Plaintiff suffers from fibromyalgia, R. 18, and cited Plaintiff's medical treatment history regarding his fibromyalgia. R. 18. This reference includes medical records which indicate that, as late as October 10, 2010—well after Dr. DeVerter's December 2008 opinion—Plaintiff had been offered, but had declined to take, the drug Lyrica as treatment for his fibromyalgia. R. 278, 310.

In determining that Plaintiff's condition had not changed substantially since January 18, 2008, ALJ Ripple also noted that Plaintiff "infrequently sought treatment for his [fibromyalgia],

9

and when he saw doctors, physical examinations were generally normal." R. 19. Moreover, he observed that "objective findings [of fibromyalgia] have been minimal." *Id.* ALJ Ripple cited Plaintiff's treatment notes from an August 16, 2011, visit with Dr. Jasmin Jerez-Marte. At the August 2011 visit with Dr. Jerez-Marte, Plaintiff presented with hypertension and hypothyroidism, and complained of diarrhea. R. 324. Plaintiff did not complain of fibromyalgia, and Dr. Jerez-Marte made no finding of fibromyalgia. Under "Problems" Dr. Jerez-Marte listed "myalgia and myositis," but prescribed no treatment. R. 327–328. ALJ Ripple also cited a September 15, 2011, visit with Dr. Ayesha Nazli. R. 342–345. Dr. Nazli listed fibromyalgia as part of Plaintiff's medical history, but made no objective finding or assessment of fibromyalgia. R. 344. Moreover, while Dr. Nazli formulated a treatment plan for hypothyroidism, hypertriglyceridemia, pharyngitis, fatigue and malaise, and depression and anxiety, Dr. Nazli made no treatment plan for Plaintiff's fibromyalgia. R. 344–345. ALJ Ripple cited a follow-up appointment with Dr. Nazli which occurred on October 5, 2011. R. 332. Dr. Nazli again formulated a treatment plan for the abovementioned medical issues, but made no assessment of and did not formulate a treatment plan for fibromyalgia. R. 333–334. Finally, he cited treatment notes, signed October 3, 2012, from a visit to Healthcare New Horizons. Plaintiff did not complain of symptoms related to fibromyalgia, and the treating physician made no assessment of and did not formulate a treatment plan for fibromyalgia. R. 450–451.

ALJ Ripple also noted that Plaintiff's conditions, including fibromyalgia, continued to be treated conservatively with medication prescribed by primary care physicians. R. 19. He cited treatment records by Dr. Nazli, signed May 26, 2011, which indicated that Plaintiff did not receive any medication for fibromyalgia, and which indicated an absence of the drug Lyrica. R. 272. Treatment records from Healthcare New Horizons, dated October 3, 2012, are similar. R.

451. As mentioned earlier, ALJ Ripple also cited medical records which indicate that Plaintiff had been offered, but had declined to take, the drug Lyrica as treatment for his fibromyalgia. R. 278, 310. Further, there is no indication in the record that Dr. DeVerter prescribed any medication for Plaintiff's fibromyalgia. *See* R. 423–427.

Finally, ALJ Ripple assigned great weight to the opinions of the state experts. R. 75–83, 85–94. Dr. Richard Surrusco contributed to Plaintiff's initial Disability Determination Explanation. Dr. Surrusco acknowledged that Plaintiff complained of fibromyalgia, but noted that "despite [Plaintiff's allegations,] current exams are grossly normal." R. 79. Dr. Joseph Duckwall contributed to Plaintiff's Disability Determination Explanation at the reconsideration level. Dr. Duckwall also acknowledged Plaintiff's complaint of fibromyalgia, but concluded that "[a]lthough [Plaintiff] may have fibromyalgia . . . evidence shows [that Plaintiff is] able to stand, walk, and move about within normal limits." R. 94. Although it does not appear that Drs. Surrusco and Duckwall considered Dr. DeVerter's opinion that Plaintiff's fibromyalgia would cause him to miss work at least three times per month, the doctors did rely on treatment notes that post-date Dr. DeVerter's opinion, which do not reveal any objective evidence of fibromyalgia and which illustrate that Plaintiff did not receive treatment for his fibromyalgia. Moreover, Dr. DeVerter's opinion does not contain any objective findings of fibromyalgia, and he did not prescribe Plaintiff any medication as treatment.

Substantial evidence thus supports ALJ Ripple's conclusion that Plaintiff has the RFC to perform light work, and ALJ Ripple's reliance on ALJ Hammond's previous physical RFC determination was proper. While ALJ Ripple did not explicitly discuss Dr. DeVerter's opinion that fibromyalgia would cause Plaintiff to miss work, he considered Plaintiff's treatment history, as well as the opinions of Drs. Surrusco and Duckwall. These records revealed that, since ALJ

11

Hammond's RFC determination, Plaintiff had not received any treatment for fibromyalgia. This fact also supports ALJ Ripple's conclusion that Plaintiff's medical record has not changed significantly, which makes ALJ Ripple's reliance on ALJ Hammond's previous physical RFC proper. ALJ Ripple's physical RFC determination is therefore supported by substantial evidence.

### C. Mental Non-Severe Impairments and RFC

ALJ Ripple found that Plaintiff's mental impairments are non-severe and, consequently, did not address these limitations in his RFC. Plaintiff argues that ALJ Ripple's determination is not supported by substantial evidence. It is the Plaintiff's burden at Step Two of the sequential evaluation process to show that his impairments are "severe." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). An impairment or combination of impairments is "severe" if it imposes severe functional limitations on Plaintiff's "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; [or results in] episodes of decompensation." 20 C.F.R. Part 404, Subpart P, Appendix 1; *see also Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) ("[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.") (citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)).

Plaintiff argues that ALJ Ripple's determination is not supported by substantial evidence for two reasons. First, Plaintiff argues that a medical opinion issued by Dr. DeVerter establishes that Plaintiff's mental impairments impose severe limitations on his ability to work. Dr. DeVerter completed a Medical Opinion Re: Ability to Do Work-Related Activities (Mental) form on December 10, 2008. R. 427. Dr. DeVerter opined that Plaintiff had "Unlimited," "Good," or "Fair" mental abilities and aptitude needed to do unskilled work, but found that

12

Plaintiff had a "Poor"[2] ability to perform at a consistent pace without an unreasonable number and length of rest periods. R. 423–424. Dr. DeVerter furthered concluded that Plaintiff's "anxiety may require frequent time outs," R. 424, and that Plaintiff would be required to miss work more than three times per month due to his fibromyalgia. R. 427. Plaintiff argues that this evidence incontrovertibly establishes that Plaintiff's mental impairments were severe. This argument fails.

Plaintiff's argument effectively asks me to reweigh the evidence and to reach a conclusion opposite ALJ Ripple. It is, however, well established that it is the ALJ's duty to evaluate the record and weigh the relative worth of the evidence. 20 C.F.R. §§ 404.1520b, 404.1527(c), 404.1545(a)(3), 416.920b, 927(c), 416.945(a)(3). I must only determine whether the ALJ's decision is supported by substantial evidence. As I will discuss below, ALJ's Ripple conclusion that Plaintiff's mental impairments were non-severe is supported by substantial evidence.

Plaintiff's second argument is that ALJ Ripple's determination is not supported by substantial evidence because the ALJ failed to consider the entirety of the record. In particular, Plaintiff asserts that ALJ Ripple ignored treatment notes, dated February 2008 to September 2011, prepared by Dr. DeVerter. Plaintiff claims that, during this period of time, Dr. DeVerter regularly diagnosed Plaintiff with depression and prescribed him Seroquel. Dr. DeVerter's records indicate that on February 12, 2009, he increased Plaintiff's Seroquel dosage. Dr. DeVerter's pertinent treatment notes are included in the record at, *inter alia*, pages 239, 255, 261, 265–66, and 427. Plaintiff argues that ALJ Ripple refused to consider these records. Plaintiff contends that, because ALJ Ripple did not consider these records, his determination that Plaintiff's mental impairment is non-severe is not supported by substantial evidence.

---

[2] "Poor" is defined as the "[a]bility to function in this area is seriously limited, but not precluded." R. 423.

13

Although Plaintiff's argument is plausible on its face, it fails upon review. First, it is not clear that ALJ Ripple actually ignored Dr. DeVerter's treatment notes. Plaintiff points to one paragraph of ALJ Ripple's opinion, in which ALJ Ripple states:

> The present case results from the claimant's March 25, 2011 protected filing for [SSI] in which he alleged disability since January 19, 2008. However, under SSR 83-20, there is no retroactivity of payments for applications filed under title XVI. Consequently, the period considered in this decision is from March 25, 2011, the protected filing date, to present.

R. 17. Plaintiff argues that this is tantamount to a declaration by ALJ Ripple that he disregarded all treatment notes prior to March 25, 2011. This suggestion is, however, plainly contradicted by ALJ Ripple's very next paragraph, which cites treatment records predating March 25, 2011, including notes from: Bedford Counseling Center, dated February 7, 2008, to September 15, 2010; New Horizons Health Care, dated March 9, 2010; Dr. Kenneth Luckay, dated January 29, 2008, to June 30, 2008; Dr. Christopher John, dated December 21, 2007, to September 11, 2008; Dr. Jasmin Jerez-Marte, dated May 23, 2008, to November 4, 2008; and Dr. Alfred Durham, dated December 9, 2008. Many of these records contain information regarding Plaintiff's mental health prior to March 25, 2011. Most importantly, ALJ Ripple cites Exhibit B1F, titled "Office Treatment Records, dated 02/07/2008 to 09/15/2010, from BEDFORD COUNSELING CENTER." R. 18. This exhibit contains treatment notes detailing Plaintiff's complaints of depression and anxiety, R. 239, shows that in September 2007 Dr. DeVerter prescribed Plaintiff Desyrel for his depression, R. 245, and indicates that Dr. DeVerter prescribed and increased Plaintiff's dosage of Seroquel. R. 248, 251, 255, 258, 260, 261. Although cited in the context of evaluating Plaintiff's physical RFC, this undermines Plaintiff's claim that Dr. DeVerter ignored evidence prior to March 25, 2011. Given that ALJ Ripple cited medical records, many of which contained information about Plaintiff's mental impairments, which predate March 25, 2011, it

14

seems that ALJ Ripple's statement that "the period considered in this decision is from March 25, 2011," is best read as an obvious statement of fact, rather than an indirect statement that he disregarded older medical records.

Second, even if ALJ Ripple ignored Dr. DeVerter's treatment notes, ALJ Ripple's determination that Plaintiff's mental impairments are non-severe would still be supported by substantial evidence. Plaintiff argues that Dr. DeVerter's treatment notes reveal that:

> Dr. DeVerter regularly diagnosed plaintiff with depression and prescribed him Seroquel to treat this condition. During his appointment with Dr. DeVerter on August 5, 2008, plaintiff complained of chronic anxiety and depression, as well as poor concentration, fatigue, tension, insomnia, and depressed mood. On February 12, 2009, Dr. DeVerter increased plaintiff's Seroquel dosage.

Objection to Report and Recommendations, docket no. 23, 5–6. ALJ Ripple explicitly considered Dr. Nazli's treatment records which reveal most, if not all, of the above information. Dr. Nazli's records, which are more recent than Dr. DeVerter's and which date from the relevant disability period, indicate that Plaintiff: was treated by Dr. DeVerter for depression, R. 281; complained of the above symptoms, *see*, *e.g.*, R. 272, 332, 453; was diagnosed with depression, *see*, *e.g.*, R. 272, 332, 453; and took one 200mg tablet of Seroquel daily. R. 272, 332, 453. Moreover, while Dr. Nazli's May 2011 treatment notes indicate that Plaintiff suffered from "Moderate Depression," Dr. Nazli's more recent notes from August 2011 and September 2012 indicate that Plaintiff suffered only from "Mild Depression," R. 332, 453, and that Plaintiff's depression score had dropped from nine, R. 272, 332, to seven, R. 453. Dr. DeVerter's treatment notes thus are consistent with and do not contradict Plaintiff's most recent treatment notes which indicate only mild depression and conservative treatment.

ALJ Ripple also explicitly relied on the opinions of state experts. The state experts indicate that they relied on treatment notes from the Bedford Counseling Center, which contain

Dr. DeVerter's treatment notes. *See* R. 77; Exhibit B1F. After reviewing Plaintiff's medical records, Dr. Julie Jennings concluded that Plaintiff's "mental status seems to be stable with regular 3 month treatment intervals." R. 79. Dr. Jennings opined that Plaintiff would suffer only mild restriction of activities of daily living and difficulties in maintain social functioning, and no difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation, and that his mental impairment was non-severe. R. 79–80. At the reconsideration level, Dr. Howard Leizer concluded that, while Plaintiff has depression, it is non-severe "as he is capable of living on his own, and his depression with anxiety is controlled by medication." R. 89. Further, Dr. Leizer opined that Plaintiff would experience only mild restriction of activities of daily living and no difficulties in maintaining social functioning, no difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation. R. 88–90.

ALJ Ripple's determination that Plaintiff's mental impairment is non-severe is thus supported by substantial evidence. Plaintiff's primary physician's treatment notes indicate that Plaintiff suffered only mild depression that was improving with medication. Moreover, state agency experts, who seemingly reviewed Dr. DeVerter's records, concluded that, while Plaintiff was depressed, his impairment was non-severe. Although ALJ Ripple's opinion could have more clearly discussed Dr. DeVerter's opinion, Dr. DeVerter's older treatment notes are consistent with, and certainly do not contradict, the findings of the state agency physicians or Plaintiff's primary physician. ALJ Ripple's determination is therefore supported by substantial evidence.

### D. Credibility

ALJ Ripple found that Plaintiff's "subjective allegations of disabling impairments . . . [were] not fully credible." R. 21. Plaintiff argues that ALJ Ripple's credibility

16

analysis fails under Fourth Circuit precedent. "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). It is not the role of this Court to determine whether Plaintiff's testimony was fully credible. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Rather, the question for the Court is whether the ALJ applied the proper legal standard in assessing Plaintiff's credibility, and whether the ALJ's decision is supported by substantial evidence. *Id.*; *see also Shifflet v. Colvin*, No. 13-112, 2015 WL 1893438, at *9 (W.D. Va. Apr. 27, 2015) (credibility determinations should be disturbed only if "exceptional circumstances" exist). The ALJ's determination "must contain specific reasons" that "make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight." SSR 96-7P, 1996 WL 374186, at *4.

Plaintiff objects to ALJ Ripple's credibility determination for the following reasons. First, Plaintiff argues that his "allegations [of his symptoms] are supported by the medical evidence of record." Objection to Report and Recommendations, docket no. 23, at 30. Second, Plaintiff argues that the "activities cited . . . [by] the ALJ . . . are not activities inconsistent with disability." *Id.* Plaintiff frantically declares that this objection amounts to something more than a mere disagreement with how ALJ Ripple weighed the evidence. As Judge Ballou's R&R makes clear, however, "[Plaintiff's] argument[] consists of nothing more than facial disagreements with the ALJ's conclusions." Report and Recommendation, docket no. 22, at 18. Plaintiff essentially asks me to reweigh the evidence and to reach a credibility determination opposite ALJ Ripple. It is, however, the ALJ who must determine the facts and resolve inconsistencies between a claimant's alleged impairments and his ability to work. *See Smith v. Chater*, 99 F.3d 635, 638

17

(4th Cir. 1996).

ALJ Ripple's credibility determination "contain[s] specific reasons" " and "makes clear . . . the weight the [ALJ] gave to the individual's statements and the reasons for that weight." SSR 96-7P, 1996 WL 374186, at *4. ALJ Ripple concluded that Plaintiff's subjective allegations of disability were not entirely credible for two reasons. First, ALJ Ripple explained that, despite Plaintiff's allegations regarding the severity of his impairments, Plaintiff has "infrequently sought treatment for his physical conditions," when he sought treatment "examinations were generally normal," and that Plaintiff's ailments "continue to be treated conservatively." R. 19. For instance, Plaintiff claimed that he used a cane, but "treatment notes from his doctors fail to show that the claimant had any difficulty ambulating . . . and no doctors noted that [Plaintiff] ever used a cane." R. 19. Second, ALJ Ripple explained that "[r]ecord inconsistencies . . . tend to detract from the credibility of [Plaintiff's] subjective allegations." R. 19. ALJ Ripple noted, for instance, that Plaintiff: (a) claimed he had not engaged in recreation for five years, but stated in June 2011 that he fishes once a month, plays darts a couple times a week, and shops for groceries twice a month; (b) testified that he does not shop, but testified that he drives to the store every other day; (c) testified that he rarely drinks, but reported to his doctor that he was a weekly drinker. R. 19. ALJ Ripple concluded that such inconsistencies "suggest that information provided by [Plaintiff] may not be entirely reliable." R. 19.

Plaintiff does not, and cannot, argue that ALJ Ripple failed to provide clear reasons for his credibility determination, or that he substituted boilerplate for analysis. *See, e.g.*, *Mascio v. Colvin*, 780 F.3d 632, 640 (4th Cir. 2015). Rather, Plaintiff simply would have me discount the reasons ALJ Ripple provided and make a credibility determination *de novo*. The standard of review in this case is whether substantial evidence supports the ALJ's determination, and not

18

whether I agree with the ALJ's determination. ALJ's Ripple credibility determination is supported by substantial evidence.

## IV. CONCLUSION

After undertaking a *de novo* review of those portions of the R&R to which Plaintiff objects, I find that substantial evidence supports the ALJ's conclusions. Accordingly, I will enter an order overruling Plaintiff's Objections, adopting the Magistrate Judge's R&R in full, granting the Commissioner's Motion for Summary Judgment, denying Plaintiff's Motion for Summary Judgment, and dismissing and striking this action from the active docket of the Court.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record, and to United States Magistrate Judge Robert S. Ballou.

Entered this  16th  day of September, 2015.

*[signature]*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE